IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
     :     CRIMINAL NO. 07-641
    v.      :
     :
PATRICK BUNTY      :

## MEMORANDUM AND ORDER

Kauffman, J.

June **9** , 2008

On October 11, 2007, a federal grand jury returned a two-count Indictment charging Defendant Patrick Bunty ("Defendant" or "Bunty") with one count of transportation of six images of child pornography, in violation of 18 U.S.C. § 2252(a)(1) (Count One), and one count of possession of six images of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two). On February 7, 2008, a two-count Superseding Indictment was issued which increased the number of images of child pornography allegedly transported and possessed from six to twelve.

Now before the Court are: (1) Defendant's Motion to Suppress Evidence Obtained Through Unlawful Searches and Dismiss All Charges Against the Defendant ("Defendant's Motion No. 1"); (2) Defendant's Motion to Quash the Indictment ("Defendant's Motion No. 3"); (3) Defendant's Motion to Dismiss the Case for Spoilation of Evidence ("Defendant's Motion No. 4"); (4) Defendant's Motion to Compel the Government to Produce an Electronic Clone or Digital Copies of the Images Alleged to Be Child Pornography ("Defendant's Motion No. 5"); (5) Defendant's Motion to Request Transcripts of the Grand Jury Proceedings ("Defendant's Motion No. 6"); (6) Defendant's Motion to Prevent the Government from Viewing, Disclosing, or Using the Contents of Privileged Attorney-Client Information ("Defendant's Motion No. 7"); (7) Defendant's Motion for an Exact Electronic Copy of the Hard Drives Seized from the

Defendant ("Defendant's Motion No. 8"); and (8) the Government's Motion to Admit Evidence of Other Crimes under Federal Rules of Evidence 414 and 404(b) (the "Government's Motion").[1]

The Court conducted a hearing on these motions on May 22, 2008. At the hearing, the parties informed the Court that they intend to stipulate to the resolution of Defendant's Motions Nos. 5, 7, and 8. Accordingly, the Court will deny without prejudice Defendant's Motions Nos. 5, 7, and 8.[2] For the reasons that follow, the Court also will deny Defendant's Motions Nos. 1, 3, 4, and 6, as well as the Government's Motion.

## I.   BACKGROUND

On January 27, 2006, Defendant flew from London's Heathrow airport to Philadelphia, Pennsylvania. At the time, he was employed as a consultant to BearingPoint, Inc. ("BearingPoint") and had been working for BearingPoint's client, Wyeth Europa, in Maidenhead, England for approximately three weeks. Upon his arrival at the Philadelphia airport, he was referred for a secondary inspection after U.S. Customs and Border Protection agents compared the passenger manifest of his flight with National Crime Information Center ("NCIC") databases and determined that he had been arrested in Lancaster County, Pennsylvania on child sexual abuse charges and recently had pled guilty to corrupting the morals of a minor in that case.

During the secondary inspection, federal agents searched Defendant's luggage without his consent. They discovered in his possession two laptop computers, a digital camera, a cell phone

---

[1]     The Court previously denied without prejudice Defendant's Motion No. 2, which sought suppression of the journal of one of Defendant's sons.

[2]     The parties read the proposed terms of the stipulations into the record at the May 22, 2008 hearing. See May 22, 2008 Hearing Transcript at 8-13. In the event the parties are unable to satisfy any of the conditions of the stipulations, Defendant may renew his motions.

that appeared to be capable of taking and storing digital images, and a variety of compact electronic storage devices, including a floppy disk and several compact discs, movie DVDs, and flash drives.[3] They also found a letter from Defendant's Lancaster County Probation Officer giving him permission to travel to England and the Probation Officer's business card, which revealed that the Probation Officer was assigned to supervise sex offenders.

The agents looked at the contents of the floppy disk by inserting it into a government-owned computer and opening the six files contained on the disk. Each file contained a digital image the agents believed to constitute child pornography. The agents also attempted to examine the two laptop computers in Defendant's possession. Special Agent Joseph Magilton ("SA Magilton") asked Defendant to enter the passwords on the laptops, and told him that if he refused, the Government would have someone else access their contents. Defendant entered the password on the BearingPoint laptop, and the agents were able to examine its contents. However, he entered an incorrect password on the Wyeth laptop, which locked the laptop and prevented the agents from examining its contents at that time.

While still at the airport, Defendant was questioned by Immigrations and Customs Enforcement ("ICE") agents, including Special Agent Brian Maher ("SA Maher"), and was informed of his Miranda rights. He ultimately was released and allowed to leave the airport without being arrested. However, the ICE agents detained all of his computer equipment capable of taking or storing digital images.[4] A subsequent forensic examination of one of the detained

---

[3]       Neither of the laptops in Defendant's possession had a floppy drive.

[4]       On April 12, 2006, the Government returned all of the detained items except for the floppy disk and two of the flash drives. Defendant was informed that the laptop computers would be returned to their owners, BearingPoint and Wyeth Europa.

3

flash drives revealed the same six images of alleged child pornography that the agents found on the floppy disk during the airport search.

On May 11, 2006, Magistrate Judge David R. Strawbridge issued a search warrant authorizing the search of Defendant's residence. The probable cause basis for the search warrant was the affidavit of SA Maher, who claimed that he had reason to believe that Defendant's residence concealed child pornography. ICE agents conducted a search of Defendant's home on May 17, 2006. The agents seized approximately 26 items, including a personal journal belonging to one of Defendant's sons and an electronic computer folder marked "Lorandos" that allegedly contains privileged attorney-client information. Defendant was indicted on October 11, 2007, and subsequently charged by Superseding Indictment on February 7, 2008.

## II.   ANALYSIS

### A.   Defendant's Motion No. 1 – Motion to Suppress Evidence Seized During An Unlawful Search and to Dismiss All Charges Against Defendant

Defendant argues that his Fourth Amendment rights were violated when his computer equipment was searched at the Philadelphia airport on January 27, 2006 because the federal agents did not have reasonable suspicion to conduct the search. As a consequence, he contends that all evidence seized as a result of the airport search should be suppressed. He further argues that since the search warrant for the May 11, 2006 search of his home was based on the evidence seized at the airport, all items seized as a result of the search of his home also must be suppressed. The Government responds that the search of Defendant's computer equipment at the border was a routine search, and therefore, did not require reasonable suspicion. However, even

if the search was non-routine, the Government argues that the agents had reasonable suspicion.[5]

"[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior.  Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985).  As the Montoya de Hernandez Court noted, not only is the expectation of privacy less at the border, "the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is also struck much more favorably to the Government at the border." Id. at 539-40.  Although the Supreme Court has not addressed specifically the search of computer equipment at the border, other federal courts have agreed that such searches do not require reasonable suspicion. See, e.g., United States v. Linarez-Delgado, 259 Fed. Appx. 506, 508 (3d Cir. 2007) ("Customs Officers exercise broad authority to conduct routine searches and seizures for which the Fourth Amendment does not require a warrant, consent, or reasonable suspicion ... Data storage media and electronic equipment, such as films, computer devices, and videotapes, may be inspected and viewed during a reasonable border search." (citations omitted)); United States v. Arnold, 523 F.3d 941, 946 (9th Cir. 2008) ("[W]e are satisfied that reasonable suspicion is not needed for customs officials to search a laptop or other personal electronic storage devices at the border."); United States v. Hampe, 2007 WL 1192365, at *4 (D. Me. Apr. 18, 2007) (finding that a computer search at the border limited to opening and perusing files with icons located on the

---

[5]     The Government also argues that Defendant does not have standing to challenge the search of the computer equipment because it belonged to BearingPoint and Wyeth. While the record is clear that the two laptops did not belong to Defendant, it is unclear to whom the other computer equipment seized at the airport belonged.  However, the Court need not resolve this factual issue in order to resolve Defendant's Motion No. 1.

computer's desktop was routine and did not require reasonable suspicion); cf. United States v. Ickes, 393 F.3d 501, 503-05 (4th Cir. 2005) (finding that the Government's search of a computer and disks found in a car at the border fell within the scope of searches permitted by 19 U.S.C. § 1581(a)).[6] Defendant has not pointed to any aspect of the January 27, 2006 border search that would distinguish it from other routine computer searches at the border. Therefore, the Court is satisfied that reasonable suspicion was not necessary in this case.

Even if reasonable suspicion were necessary, the Court is satisfied that the circumstances in this case gave rise to such suspicion. The customs agents referred Defendant for a secondary inspection based on their knowledge of his arrest in Lancaster County for the sexual abuse of a child and the resulting conviction for corrupting the morals of a minor.[7] During the secondary inspection, the agents discovered that he possessed two laptop computers, a digital camera, a cell phone that appeared to be capable of taking and storing digital images, and a variety of electronic storage devices (a floppy disk, several compact discs, movie DVDs, and flash drives). They also discovered a letter from his Probation Officer giving him permission to travel to England, and the

---

[6]     19 U.S.C. § 1581(a) provides:

> Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters, ... or at any other authorized place ... and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board...

While § 1581(a) is not implicated in this case, the principle that customs agents do not need reasonable suspicion to conduct a search at the border is nevertheless relevant.

[7]     The Government states that it is the routine practice of customs agents to compare passenger manifests with NCIC databases to learn if any of them have criminal convictions.

Probation Officer's business card revealing that he was assigned to supervise sex offenders. These factors, combined with Defendant's extensive international travel and the fact that the floppy disk in his possession could not be used in any of the computers he had with him for work purposes, gave the agents reasonable suspicion to search his computer equipment. Accordingly, the Court finds that the January 27, 2006 airport search was proper and that Defendant has not set forth a sufficient basis for suppression of the May 11, 2006 search of his home. The Court will deny Defendant's Motion No. 1.

**B.**       **Defendant's Motion No. 3 – Motion to Quash the Indictment**

Defendant's Motion No. 3 seeks to quash the Indictment on two separate grounds.[8] First, Defendant argues that dismissal of the charges against him is appropriate because the Government engaged in prosecutorial misconduct during the grand jury proceedings by: (1) knowingly reviewing and using information protected by the attorney-client privilege to question Defendant's family members in front of the grand jury; (2) coercing and manipulating Defendant's wife, Inez Bunty, to testify against him at the grand jury despite her attempts to claim spousal privilege; and (3) utilizing evidence seized in violation of Defendant's Fourth Amendment right to be free from unreasonable searches and seizures. See Brief in Support of Defendant's Motion No. 3, at 2. Second, Defendant seeks dismissal of the charges on the ground that there is insufficient evidence that the images in this case depict "sexually explicit conduct" within the meaning of 18 U.S.C. § 2256(2)(A).

---

[8]       At the time Defendant filed this Motion, the Government had not obtained the Superceding Indictment. However, the Court will consider Defendant's arguments with respect to the Superceding Indictment. `

### 1.    Alleged Prosecutorial Misconduct in the Grand Jury

Defendant argues that the alleged instances of prosecutorial misconduct merit dismissal of the charges pending against him because the grand jury would not have indicted him but for the presentation of improper evidence.  He contends that the Government obtained privileged information from an electronic folder entitled "Lorandos" regarding previous allegations of sexual abuse and then used the information to question witnesses and inflame the grand jury to indict him on an unrelated offense.[9]  See Brief in Support of Defendant's Motion No. 3, at 5. With respect to the testimony of Inez Bunty, Defendant's wife, Defendant argues that she was questioned in front of the first grand jury, despite asserting spousal privilege, regarding the prior allegations of sexual abuse and "family myths and rumors" regarding the sexual abuse of one of their sons, M.B.  See id. at 7.  Finally, Defendant argues that his other son's journal fell outside the scope of the Government's search warrant of his home and, therefore, that its use for questioning during the grand jury was improper.

The Government responds that Defendant's Motion No. 3, which was made prior to presentment to the second grand jury, is now moot because the alleged instances of prosecutorial misconduct all pertain to testimony that was not presented by the Government in obtaining the Superseding Indictment.  See Government's Omnibus Response at 5.[10]  In support of its contention, the Government attaches SA Maher's testimony dated October 11, 2007 from the first grand jury proceedings, as well as the transcript from the second grand jury presentment

---

[9]    Lorandos & Associates represent Defendant in this action; the firm also represented him in the earlier state court proceedings in Lancaster County.

[10]    The Government filed one comprehensive response to Defendant's Motions Nos. 3, 6, 7, and 8.

8

dated February 7, 2008.  The Government contends that the February 7, 2008 transcript demonstrates that the only testimony presented to the second grand jury was that of Maher, who "did little more than read his testimony from the first presentment," and that no other evidence or testimony was presented to obtain the Superseding Indictment.  The Government also argues that the allegations of misconduct are unfounded.

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."  Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) (finding that a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant).  Under this standard, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."  Id. at 256 (citation omitted). In Bank of Nova Scotia, the Supreme Court noted that there are certain cases in which "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice."  Id. at 257.  However, the Court called these "isolated exceptions to the harmless-error rule" and provided as examples, two cases in which racial or sex discrimination during the selection of grand jurors had compelled dismissal of the indictments because it could be presumed that discriminatorily selected grand jurors would treat defendants unfairly.  Id.; see also United States v. Perez, 246 Fed. Appx. 140, 143-44 (3d Cir. 2007) (explaining that the standard of review where the defendant does not allege structural error or fundamental unfairness in grand jury proceedings is governed by the harmless error rule); United States v. Soberon, 929 F.2d 935, 940 (3d Cir. 1991) ("[T]he requirement of prejudice is

9

excused only in extreme cases, where the 'structural protections of the grand jury' have been compromised and remedies other than dismissal would be impractical." (citations omitted)).[11]

The transcript from the second grand jury proceedings supports the Government's contention that the Superseding Indictment was obtained without utilizing any of the allegedly improper evidence.  Even assuming *arguendo* that the prosecution improperly obtained and utilized certain evidence before the first grand jury, Defendant has failed to set forth any prejudice that resulted at the second grand jury proceeding.  See May 22, 2008 Hearing Transcript at 87-90.[12]  Accordingly, dismissal of the Superseding Indictment on this basis would be inappropriate.[13]

### 2.    "Sexually Explicit Conduct"

Defendant next argues that the charges against him should be dismissed because the images he is alleged to have possessed and transported do not show minors engaged in "sexually

---

[11]     In Soberon, the Third Circuit noted that the only instances thus far in which the Supreme Court has recognized the exception to the harmless error rule have involved "grand juries selected in a discriminatory manner, which tainted the fact finding process itself."  929 F.2d at 940 (citations omitted).

[12]     Specifically, defense counsel conceded at the May 22, 2008 hearing that he has no actual knowledge that the Government looked at or utilized the contents of the "Lorandos" folder.  See May 22, 2008 Hearing Transcript at 88 ("But I don't know what they did with it, you're right.").  He also conceded that the second grand jury proceedings did not involve the allegedly tainted family testimony.  See id. ("They cleaned that up, that's correct.").  Moreover, he acknowledged that there would be no prejudice to Defendant at trial if none of the testimony regarding prior bad acts was admitted at trial.  See id. at 90 (The Court: "But if the testimony relating to the prior alleged acts doesn't come into the trial then there's no prejudice.  Is that right?"  Counsel: "To this individual defendant."  The Court: "Well, that's all we're dealing with right now."  Counsel: "Yes, Your Honor.  Certainly that's well said.")

[13]     Since Defendant has failed to demonstrate prejudice, the Court need not reach the merits of his claims of prosecutorial misconduct.  In any event, Defendant has not presented sufficient evidence at this time to conclude that the prosecution engaged in any misconduct.

explicit conduct" as defined by 18 U.S.C. § 2256(2)(A).  Section 2256(2)(A) defines "sexually

explicit conduct" as "actual or simulated":

    (i)      sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (ii)     bestiality;

    (iii)    masturbation;

    (iv)    sadistic or masochistic abuse; or

    (v)     lascivious exhibition of the genitals or pubic area of any person.

The Government contends that the images at issue in this case depict "sexually explicit conduct"

because they satisfy the "lascivious exhibition of the genitals or pubic area of any person"

requirement.

      Section 2256(2)(A) does not define "lascivious exhibition."  The Third Circuit has

adopted the six-factor test set forth in United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986),

as a means of determining whether a genital or pubic area exhibition is "lascivious."  United

States v. Villard, 885 F.2d 117, 122 (3d Cir. 1989).  Under the Dost test, the following factors

must be analyzed:

    1)     whether the focal point of the visual depiction is on the child's genitalia or pubic area;

    2)     whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

    3)     whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

    4)     whether the child is fully or partially clothed, or nude;

    5)     whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

    6)     whether the visual depiction is intended or designed

11

to elicit a sexual response in the viewer.

Id. (citing Dost, 636 F. Supp. at 832).   The Third Circuit has emphasized that images "must consist of more than merely nudity" in order to constitute a "lascivious exhibition;" otherwise, "inclusion of the term 'lascivious' would be meaningless." Id. at 121; see also United States v. Knox, 32 F.3d 733, 750 (3d Cir. 1994) ("Villard simply stated the obvious principle that nudity alone is insufficient to constitute a *lascivious* exhibition ... Nudity must be coupled with other circumstances that make the visual depiction lascivious or sexually provocative in order to fall within the parameters of the statute." (emphasis in original)).[14] In determining whether an image is lascivious, all six of the Dost factors should be presented to the jury for consideration, and more than one factor must be present in order to establish lasciviousness; *however*, all six factors need not be present. See Villard, 885 F.2d at 122.

Both parties have presented arguments as to how the Court should analyze the images at issue in light of the Dost factors.   The Court concludes, however, that the issue of lasciviousness should be submitted to the jury in this case. See, e.g., Villard, 885 F.2d at 122 ("The district court in the instant case *instructed the jury* to consider each of the Dost factors ... We agree with the district court's basic application of the Dost factors.   All six factors should be *presented to the jury* for consideration." (emphasis added)); United States v. Arvin, 900 F.2d 1385, 1388 (9th Cir. 1990) ("Arvin's second argument is that the photos were not 'lascivious' as a matter of law. We reject this characterization of the pictures.   While it is arguable that the pictures are not, in fact, lascivious, the district court did not err in refusing to dismiss the indictment on this basis.

---

[14]      The Third Circuit has noted that "[t]he legislative history of the statute indicates ... that an exhibition of the genitals need not meet the standard for obscenity in order to be considered lascivious." Villard, 885 F.2d at 122 (citations omitted).

The issue of lasciviousness was properly allowed to go to the jury."). Accordingly, the Court

will not dismiss the charges against Defendant on this basis, and Defendant's Motion No. 3 will

be denied.

### C.    Defendant's Motion No. 4 – Motion to Dismiss the Case for Spoilation of Evidence

Defendant's Motion No. 4 argues that the Government has destroyed "important and

potentially exculpatory" evidence by: (1) connecting the flash drives seized from Defendant to a

forensically unsecure environment without first making a forensic copy, and (2) returning the two

seized laptop computers to BearingPoint and Wyeth without first making a forensic copy of the

contents of each. In Defendant's Reply in Support of Motion No. 4, he makes the additional

argument that the Government destroyed evidence by viewing the contents of the floppy disk on

the government computer at the airport without first making a forensic copy. Defendant

contends that this viewing destroyed the "last accessed" data on the floppy disk, which would

have provided important information regarding when the alleged child pornography was last

accessed prior to the January 27, 2006 airport search. He concludes, based on these alleged

instances of spoilation, that dismissal is appropriate.

The Government disputes the facts as presented by Defendant. First, the Government

contends that at no point on January 27, 2006 did a federal agent access any of the flash drives in

Defendant's possession at the airport – rather, the devices were preserved and detained by agents

for later forensic examination by an expert. See Government's Response No. 4, at 6 and n.5;

May 22, 2008 Hearing Transcript at 19, 32-34, 44. Second, the Government states that both

laptop hard drives *were* imaged by the forensic expert, and in the case of the machine which

"bore artifacts of suspect Internet activity," the original hard drive was retained by the

Government. <u>See</u> Government's Response No. 4, at 6.  Defendant has presented no evidence to

refute these assertions.  Accordingly, the Court finds no spoilation with respect to either the flash

drives or the laptop computers seized at the airport on January 27, 2006.

With respect to the floppy disk, the Government concedes that by opening the files on the

floppy disk, the agents altered the "last accessed" data associated with each file.  <u>See</u> May 22,

2008 Hearing Transcript at 56.[15]  However, the Government has offered expert testimony that the

"last accessed" data was the *only* information altered when the agents viewed the images on the

floppy disk.  <u>See id.</u> at 42.  The Government argues that the alteration to the "last accessed" data

was not a significant alteration to the floppy disk, and that the agents conducted their search by

the least intrusive means possible.  Moreover, even if evidence were spoiled, the Government

argues that Defendant must demonstrate bad faith in order to obtain a remedy, but has failed to

make any such showing in this case.  <u>See</u> Government's Response No. 4, at 7.  Specifically, the

Government cites <u>United States v. Santtini</u>, 963 F.2d 585 (3d Cir. 1992), in which the Third

Circuit noted that "[a]s a general matter, even when actions by the prosecution appear to deprive

a criminal defendant of his constitutional right to present a defense, no remedy will lie for such

infringement absent a showing that the government has caused the unavailability of material

evidence and has done so in bad faith."  <u>Id.</u> at 596-97 (citation omitted); <u>see also</u> <u>Arizona v.</u>

<u>Youngblood</u>, 488 U.S. 51, 57 (1988) ("Our decisions in related areas have stressed the

---

[15]     The "last accessed" data for a computer file reflects when that file last was
opened.  When the agents opened the files on the floppy disk on January 27, 2006, the "last
accessed" date associated with each file changed to January 27, 2006.  At the May 22, 2008
hearing, the Government's computer forensics expert testified that there is no way to retrieve the
previous "last accessed" date.  <u>See</u> May 22, 2008 Hearing Transcript at 50-51.

importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government."); United States v. Valenzuela-Bernal, 458 U.S. 858, 872 (1982) (holding that the prompt deportation of the witnesses in a criminal case was justified "upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution").

"Spoilation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting Mosaid Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). If a party is able to demonstrate that evidence has been subject to spoilation, there are a variety of sanctions that the Court in its discretion may impose, such as the dismissal of a claim or claims, the suppression of evidence, an adverse inference, fines, or attorney's fees and costs. Id. at 110-11 (citation omitted). However, in exercising its discretion, the Court must consider the following factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Id. (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)). When looking to the first factor regarding degree of fault, "the court must consider whether [the party that destroyed the evidence] intended to impair the ability of the other side to effectively litigate its case." Id. (quoting In re Wechsler, 121 F. Supp. 2d 404, 415 (D. Del. 2000); citing Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995)). With respect to the second factor, prejudice, "the court should take into

15

account whether [the party that did not destroy the evidence] had a meaningful opportunity to examine the evidence in question before it was destroyed." Id. at 112.  In deciding on a sanction, the Court should choose the "least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." Id. at 111 (citations omitted).

At the May 22, 2008 hearing, the Court heard testimony from SA Magilton, SA Maher, and Agent Douglas Green ("Agent Green"), a computer forensics expert with ICE, regarding the agents' actions on January 27, 2006 and the impact that these actions had on the underlying forensic data on the floppy disk.  Both SA Magilton and SA Maher testified that during the January 27, 2006 search, the agents did nothing more than open the six files on the floppy disk, view the images in those files, and then close the files.  See May 22, 2008 Hearing Transcript at 17, 25-28, 34-38.  Agent Green testified that his forensic analysis revealed no alterations to the floppy disk other than the change to the "last accessed" data for each file that occurred when agents opened the files.  See id. at 42.  In light of this testimony, the Court concludes that the agents used the least intrusive means of determining that the floppy disk contained possible child pornography, and that, based on the circumstances known to the agents at the time of the secondary inspection (see Part II.A, supra), they were acting in good faith when they opened the files.

In addition, the Court finds that the prejudice, if any, that Defendant will suffer as a result of the agents' actions is minimal.  Defendant argued at the May 22, 2008 hearing that by altering the "last accessed" date associated with each of the files on the floppy disk, the agents prevented him from arguing to the jury that the files had not been accessed while they were in his possession.  See May 22, 2008 Hearing Transcript at 53-56.  Specifically, Defendant intends to

16

argue to the jury that since the files had not been opened while the disk was in his possession, he

did not know what was on the floppy disk.  See id.  However, as the Court noted at the hearing,

the Government, not Defendant, bears the burden of proving that Defendant knowingly possessed

the alleged child pornography.  Moreover, Defendant will be able to cross examine the agents

and forensic expert at trial regarding the altered "last accessed" data and what that data might

have demonstrated had it not been altered.  Importantly, neither side knows what the "last

accessed" date was prior to the agents' search, and to the extent that data would have been

helpful to the Government's case, the Government similarly has lost the ability to use it as

evidence at trial.  Since Defendant has failed to demonstrate bad faith on the part of the agents or

prejudice to his case, the Court will deny Defendant's Motion No. 4.

**D.**     **Defendant's Motion No. 6 – Motion Requesting Transcripts of the Grand Jury Proceedings**

Defendant's Motion No. 6 requests the transcripts of the grand jury proceedings in this

case pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).  He argues that disclosure of

the transcripts is necessary in order to prove several instances of alleged prosecutorial

misconduct (discussed above with respect to Defendant's Motion No. 3) that warrant dismissal of

the charges against him and to prevent the prosecution from engaging in further misconduct in

the event this case goes to trial.  See Brief in Support of Defendant's Motion No. 6, at 4-5.

Alternatively, Defendant argues that the Court should conduct an *in camera* review of the grand

jury transcripts in order to determine what misconduct, if any, the prosecution engaged in.  See

id. at 6.

The Government responds that Defendant's claims of prosecutorial misconduct are

unfounded and that he is not entitled to copies of the grand jury testimony.  The Government

argues that pursuant to both Federal Rule of Criminal Procedure 16(a)(2) and the Jencks Act, 18

U.S.C. § 3500, the Government is not obligated to produce a witness's statements until that

witness completes direct examination at trial.  <u>See</u> Government's Omnibus Response at 14-15.

The policy of the U.S. Attorney's Office in this district is to turn over Jencks Act materials two

weeks in advance of trial, but the Government already has turned over Jencks Act materials –

including two grand jury transcripts – for the law enforcement witness in this case, SA Maher.

The Government has not decided which other witnesses it will call during its case-in-chief, and

therefore, it argues that production of other witness statements is premature.

　　　"The decision to permit disclosure [of grand jury transcripts] is within the discretion of

the trial court judge who must assess whether the need for disclosure overbalances the

requirements of secrecy." <u>United States v. Mahoney</u>, 495 F. Supp. 1270, 1272 (E.D. Pa. 1980).

Federal Rule of Criminal Procedure 6(e)(3)(E) provides, *inter alia*, that "[t]he court may

authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs –

of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; (ii) at the

request of a defendant who shows that a ground may exist to dismiss the indictment because of a

matter that occurred before the grand jury..." Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).  Defendant states

that he is entitled to the grand jury transcripts on both of these grounds, but focuses his

arguments on subsection (ii).  Since "it is settled that ... exception [(i)] applies only to situations

where the judicial proceeding for which disclosure of grand jury material is sought is a judicial

proceeding different from the criminal trial authorized by the grand jury's indictment," the Court

will focus only on subsection (ii).  <u>United States v. Nguyen</u>, 314 F. Supp. 2d 612, 615 (E.D. Va.

2004) (citing <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677 (1958)).[16]

Under subsection (ii), "courts generally reject unsupported beliefs and conjectures as grounds for disclosure of grand jury materials to defendants." <u>United States v. Shane</u>, 584 F. Supp. 364, 367 (E.D. Pa. 1984) (citations omitted); <u>see also</u> Nguyen, 314 F. Supp. 2d at 616 (noting that the party seeking disclosure cannot satisfy its burden with "conclusory or speculative allegations of misconduct" (quoting <u>United States v. Morgan</u>, 845 F. Supp. 934, 941 (D. Conn. 1994))); <u>United States v. Ayeki</u>, 289 F. Supp. 2d 183, 187 (D. Conn. 2003) (finding that the defendant had not met his burden for inspection of grand jury minutes or an *in camera* review in the absence of factual support). Similarly, courts should not conduct an extended *in camera* review of such materials on the basis of unsupported pleadings. <u>Shane</u>, 584 F. Supp. at 367. "Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" <u>Nyugen</u>, 314 F. Supp. 2d at 616 (quotation omitted). As the <u>Shane</u> court noted, a defendant seeking disclosure of grand jury materials based on misconduct "should document his allegations with affidavits or other proffered evidence. Such affidavits or other evidence should be of a particularity sufficient to support a finding that 'inherently suspect' procedures were used before the grand jury." 584 F. Supp. at 367; <u>see also</u> Nguyen, 314 F. Supp. 2d at 616.

The Government has turned over the transcript of the second presentment to the grand

---

[16]     As the <u>Nguyen</u> court noted, were this not the case, the first exception would render the second superfluous, as the first exception would always encompass the second. 314 F. Supp. 2d at 615-16.

jury, as well as the transcript of SA Maher's testimony from the first grand jury; therefore, the only transcripts still at issue are those of other witnesses from the first grand jury. As noted in Part II.B.1, supra, Defendant has failed to demonstrate irregularities with respect to the second grand jury proceedings which would require dismissal of this case. Moreover, Defendant has offered nothing more than "unsupported beliefs and conjectures" regarding improprieties that may have occurred during the first grand jury proceeding. Therefore, Defendant has failed to meet his heavy burden under Rule 6(e)(3)(E)(ii). Accordingly, the need for disclosure in this case does not outweigh the requirement of secrecy, and the Court will deny Defendant's Motion No. 6.

**E.**    **The Government's Motion - Motion to Admit Evidence of Other Crimes Under Federal Rules of Evidence 414 and 404(b)**

Pursuant to Federal Rules of Evidence 414 and 404(b), the Government seeks to introduce evidence that:

(1)    Defendant sexually abused one of his sons, M.B., for approximately nine years, from the time he was 5 or 6 years old until he was 14 or 15 years old. The Government alleges that testimony would show that Defendant sexually molested M.B. three or four times per week during that period by performing oral sex upon him and engaging in acts of masturbation, and that Defendant showed M.B. sexually suggestive materials prior to molesting him. The abuse allegedly occurred between 23 and 33 years ago.

(2)    Defendant sexually abused his nine-year-old granddaughter, C.B., by touching her genitals and private parts with his hands and his penis, and also by having her

touch his penis.  In addition, Defendant allegedly forced C.B. to sit on his lap while he was naked and watch videos on his computer.  The abuse allegedly occurred between January 1999 and April 2004, from when C.B. was approximately one year old until she was almost four years old.[17]

The Government argues that the testimony from these alleged victims will establish by a preponderance of the evidence that Defendant committed these acts and that evidence of these acts is highly probative because it demonstrates that he has a propensity to commit sexual crimes involving prepubescent children.

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove character or demonstrate action in conformity with those acts.  See Fed. R. Evid. 404(b).  However, under Rule 404(b) such evidence may be admitted "for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Id.  Moreover, Federal Rules of Evidence 413-415 "establish exceptions to the general prohibition on character evidence in cases involving sexual assault and child molestation."  Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 151 (3d Cir. 2002).  Federal Rule of Evidence 414 provides that:

> In a case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

Fed. R. Evid. 414(a).  Rule 414 defines "child" to mean a person below the age of fourteen.  See Fed. R. Evid. 414(d).  The phrase "offense of child molestation" refers to:

---

[17]     These are the acts charged in the Lancaster County child sexual abuse case.

> [A] crime under Federal law of the law of a State ... that involved –
>
> (1) any conduct proscribed by chapter 109A of title 18, United States Code, that was committed in relation to a child;
> (2) any conduct proscribed by chapter 110 of title 18, United States Code;
> (3) contact between any part of the defendant's body or an object and the genitals or anus of a child;
> (4) contact between the genitals or anus of the defendant and any part of the body of a child;
> (5) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child; or
> (6) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(5).

Fed. R. Evid. 414(d).  Thus, in child molestation cases, evidence of prior acts potentially is admissible under both Rule 414 or one of the exceptions to Rule 404(b).  See, e.g., United States v. Meecham, 115 F.3d 1488, 1491 (10th Cir. 1997) ("We here analyze the court's ruling under both Rules 404(b) and 414; and we find no reversible error under either alternative."); cf. United States v. Roberts, 185 F.3d 1125, 1143 (10th Cir. 1999) ("Whether under Rule 404(b) or Rule 413, therefore, the district court did not abuse its discretion in holding two evidentiary hearings consistent with our remand order and making findings supporting the admissibility of some of the women's testimony, while excluding others' [testimony].").

The text of Rule 414 is silent on the steps a district court must take when deciding whether to admit evidence of prior instances – charged or uncharged – of child molestation.[18] Addressing the application of Federal Rules of Evidence 413 and 415, the Third Circuit has set

---

[18]    "[T]he legislative history of Rule 413 - 415 indicates that Congress intended to allow admission not only of prior convictions for sexual offenses, but also of uncharged conduct." Johnson, 283 F.3d at 151 (citing 140 Cong. Rec. 23,603 (1994) (Statement of Rep. Molinari) ("The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule.")).

the standard for a district court to use when analyzing evidence under Rules 413, 414, and 415.

See Johnson, 283 F.3d at 150-56.[19]  See also Huddleston v. United States, 485 U.S. 681 (1988)

(considering a similar admissibility issue in the context of Federal Rule of Evidence 404(b)).[20]  In

Huddleston, the Supreme Court found that, when deciding whether to admit prior act evidence, a

district court judge should determine whether a reasonable jury could find by a preponderance of

evidence that the defendant committed the prior act.  Huddleston, 485 U.S. at 690.[21]  Thus, a

district court considering evidence under Rule 414 must decide whether a reasonable jury could

find by a preponderance of the evidence that the past act was an "offense of child molestation"

under Rule 414(d)'s definition and that it was committed by the defendant.  Cf. Johnson, 283

F.3d at 154-55 (applying the Huddleston standard to evidence offered under Rule 415).

Even if the proposed prior acts testimony satisfies Rule 414, a district court must also

perform the balancing test set forth in Federal Rule of Evidence 403, which provides that

---

[19]      Although purely *dicta* with respect to the application of Rule 414, the case
provides the analytical framework for the Court to follow in this case.

[20]      As mentioned above, Federal Rule of Evidence 404(b) allows for the introduction
of evidence of "other crimes, wrongs, or acts" to prove issues other than character such as
"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident."  The Third Circuit noted in Johnson that because Rule 404(b) and Rules 413-415 are
similar in that they allow the admission of past acts – including uncharged conduct – most courts
considering the issue have concluded that "Huddleston's standard for screening uncharged
conduct applies to Rules 413-15." 283 F.3d at 153 (citations omitted).

[21]      The Supreme Court relied on the standard in Federal Rule of Evidence 104(b) in
reaching its decision.  Rule 104(b) provides that "[w]hen the relevancy of evidence depends upon
the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction
of evidence sufficient to support a finding of the fulfillment of the condition." In the case of
prior acts evidence, the Supreme Court felt that the question of a defendant's commission of a
prior act was one of conditional relevancy – if the defendant committed the prior act, then it was
relevant.

relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; see also Johnson, 283 F.3d at 155 (finding that the Rule 403 standard is applicable to Rules 413-415). "[T]he Rule 403 balancing inquiry is, at its core, an essentially discretionary one that gives the trial court significant latitude to exclude evidence." Johnson, 283 F.3d at 156 (citation omitted). A district court performing the Rule 403 balancing test should consider whether the past act is "substantially similar to the act for which the defendant is being tried" and whether the past act can "be demonstrated with sufficient specificity." Id. It also should consider "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." Id. (quoting United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998)). In the instant case, assuming *arguendo* that a reasonable jury could find by a preponderance of evidence that Defendant committed the prior acts to which M.B. and C.B. would testify, the probative value of their testimony would be substantially outweighed by the danger of prejudice to Defendant.

The acts to which M.B. and C.B. would testify fail to share enough similarities with the charged offenses to make their testimony highly probative. In cases admitting testimony regarding prior acts of molestation, courts are careful to point to specific similarities between the prior acts and the charged acts in finding that the probative value outweighs the prejudice. See, e.g., United States v. Benally, 500 F.3d 1085, 1091 (10th Cir. 2007) (stating that "[m]ost significant in the court's determination that the evidence was highly probative was the similarity between the current charge and the prior acts" and citing the various similarities between the

prior acts and charged offense, including the age and sex of the victims, the fact that the victims were family members, and the use of force or a weapon); United States v. Larson, 112 F.3d 600, 605 (2d Cir. 1997) (affirming the admission of Rule 414 testimony which involved events that had occurred 16-20 years prior, but which also "closely paralleled the events complained of ... taking place in the same geographic locations, with [the defendant] using the same enticements for both [victims], plying both with alcohol, and engaging both in similar progressions of sexual acts"); United States v. Sandoval, 410 F. Supp. 2d 1071, 1077 (D.N.M. 2005) ("The circumstances surrounding the prior allegations are similar to those with which [the defendant] is now charged. The alleged conduct in the prior and current allegations occurred in bed at night while a mother was in the bed, or had just walked into the room ... and the instances involved very young girls.").

The Government argues that the prior acts involving M.B. and C.B. are similar to the charged offenses because they demonstrate his interest in pre-pubescent children, but such similarity is inherent in all Rule 414 evidence. The specific conduct alleged in this case, however, is vastly different from the conduct about which M.B. and C.B. would testify. They would testify regarding conduct that involves much more than just possession or transportation of child pornography – their testimony involves allegations that Defendant engaged in direct sexual contact with children.[22] Moreover, the prior acts, unlike the charged offenses, involve Defendant's own family members. While it is not enough to rely solely on the stigma of child

---

[22]     There are no allegations in this case that Defendant produced the child pornography seized on January 27, 2006, or that he was guilty of direct sexual contact with children.

sexual abuse in its Rule 403 analysis,[23] the Court cannot ignore the separate and equally serious

stigma associated with incest or the possibility that a jury might hear such allegations and decide

to convict Defendant of completely unrelated offenses solely on the basis of that stigma.

Additionally, with respect to M.B., the Court notes that the length of time that has elapsed

since the acts involving M.B. allegedly occurred further diminishes the probative value of his

testimony and increases the prejudice Defendant would face were his testimony admitted.  There

may be instances in which prior acts are "too remote in time to have any probative value."  Id. at

602 (quoting the district court's rationale for excluding the testimony of a witness who would

have testified regarding events that occurred more than 21 years prior to the trial).[24]  The acts to

which M.B. would testify allegedly took place between 23 and 33 years ago and, as discussed

above, are not similar to the offenses charged in this case.  The Court agrees with Defendant that,

given the lengthy period of time that has passed, intervening events may have impacted

memories, biases, and motives with respect to M.B.'s testimony.  Moreover, the difficulties

Defendant would face in investigating and defending against such allegations after so many years

would be substantial.  Weighing all of these factors, the Court concludes that the probative value

---

[23]     As the Eighth Circuit has noted, this stigma is the very reason evidence of this sort
previously was excluded by courts, but "it is precisely such holdings that Congress intended to
overrule" by passing Rule 414.  United States v. LeCompte, 131 F.3d 767, 770 (8th Cir. 1997);
see also Benally, 500 F.3d at 1093 ("[The defendant] is incorrect in his assertion that the only
reason to introduce this evidence was to bias the jury.  Evidence of other similar crimes involving
sexual assault and child molestation was determined by Congress to be probative of a
defendant's propensity to commit such crimes.");  Sandoval, 410 F. Supp. 2d at 1079 (noting that
the risk that a jury may convict on the basis of testimony regarding a prior offense is present in
all Rule 414 cases, but that "[t]he question is how great that risk is" and admitting the proposed
Rule 414 testimony because the risk in the case was not greater than in any other Rule 414 case).

[24]     This ruling was not appealed and thus not addressed by the Second Circuit.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
                                  :

     v.                           :      **CRIMINAL NO. 07-641**

                                     :

PATRICK BUNTY                   :

### ORDER

**AND NOW** this 9th day of June, 2008, upon consideration of Defendant's Motion to Suppress Evidence Obtained Through Unlawful Searches and Dismiss All Charges Against the Defendant (Defendant's Motion No. 1 at docket no. 13); Defendant's Motion to Quash the Indictment (Defendant's Motion No. 3 at docket nos. 15, 17); Defendant's Motion to Dismiss the Case for Spoilation of Evidence (Defendant's Motion No. 4 at docket nos. 16, 17); Defendant's Motion to Compel the Government to Produce an Electronic Clone or Digital Copies of the Images Alleged to Be Child Pornography (Defendant's Motion No. 5 at docket no. 18); Defendant's Motion to Request Transcripts of the Grand Jury Proceedings (Defendant's Motion No. 6 at docket no. 19); Defendant's Motion to Prevent the Government from Viewing, Disclosing, or Using the Contents of Privileged Attorney-Client Information (Defendant's Motion No. 7 at docket no. 20); Defendant's Motion for an Exact Electronic Copy of the Hard Drives Seized from the Defendant (Defendant's Motion No. 8 at docket no. 21); the Government's Motion to Admit Evidence of Other Crimes under Federal Rules of Evidence 414 and 404(b) (docket no. 30); and all Responses and Replies thereto (docket nos. 28, 29, 33, 34, 37, 38, 39, 40, 41, and 45); and for the reasons stated in the accompanying Memorandum, it is

**ORDERED** that:

of the prior acts testimony is substantially outweighed by the potential for prejudice to Defendant under Rule 403.

With respect to the Government's alternative argument to admit the prior acts evidence under Rule 404(b), the Court notes that even if the testimony of M.B. and C.B. were to satisfy the Rule 404(b) standard, it is subject to the Rule 403 balancing test. See, e.g., United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988) ("In addition to the Rule 404(b) test, evidence of other crimes must also be evaluated against the unfair prejudice standard of Rule 403."). Since the Court has determined that the probative value of the testimony of M.B. and C.B. is substantially outweighed by the potential for prejudice under Rule 403, the Government's alternative ground for admission of the testimony must fail. Accordingly, the Court will prohibit the Government from offering the prior act testimony of M.B. and C.B. in its case-in-chief.

## V.      CONCLUSION

For the reasons stated above, Defendant's Motions Nos. 1, 3, 4, and 6, and the Government's Motion will be denied. In addition, Defendant's Motions Nos. 5, 7, and 8 will be denied without prejudice. An appropriate Order follows.

1)   Defendant's Motion to Suppress Evidence Obtained Through Unlawful Searches and Dismiss All Charges Against the Defendant (Defendant's Motion No. 1 at docket no. 13), Defendant's Motion to Quash the Indictment (Defendant's Motion No. 3 at docket nos. 15, 17), Defendant's Motion to Dismiss the Case for Spoilation of Evidence (Defendant's Motion No. 4 at docket nos. 16, 17), Defendant's Motion to Request Transcripts of the Grand Jury Proceedings (Defendant's Motion No. 6 at docket no. 19), and the Government's Motion to Admit Evidence of Other Crimes under Federal Rules of Evidence 414 and 404(b) (docket no. 30) are **DENIED**.

2)   Defendant's Motion to Compel the Government to Produce an Electronic Clone or Digital Copies of the Images Alleged to Be Child Pornography (Defendant's Motion No. 5 at docket no. 18), Defendant's Motion to Prevent the Government from Viewing, Disclosing, or Using the Contents of Privileged Attorney-Client Information (Defendant's Motion No. 7 at docket no. 20), and Defendant's Motion for an Exact Electronic Copy of the Hard Drives Seized from the Defendant (Defendant's Motion No. 8 at docket no. 21) are **DENIED without prejudice**.

**BY THE COURT:**

**BRUCE W. KAUFFMAN,   J.**